We'll hear argument next in Case 10-6549, Reynolds v. United States. Ms. Cain. Mr. Chief Justice, and may it please the Court, recognizing that certain offenders convicted before enactment or an implementation of SORNA would be unable to comply with SORNA's initial registration requirement, Congress included Section 169.13d, delegating to the Attorney General the authority to determine whether and how to apply SORNA's registration requirements to those offenders. Mr. Reynolds is one of those offenders because he was convicted, sentenced, and released from prison a year before SORNA was enacted. But for a valid exercise of the Attorney General's authority under Subsection D, Mr. Reynolds had no obligation to register under SORNA, could not initially register under SORNA, and therefore was not subject to SORNA's criminal penalties. Action by the Attorney General was needed to bring offenders like Mr. Reynolds into the new system. And because both implementing SORNA and determining whether and how SORNA would be applied to pre-enactment offenders would require time and consideration, Congress left the Wetterling Act registration law in place for 3 years to ensure that all offenders would be covered under the old law, and until the next year. So the Wetterling Act, Your Honor, was not effective? The Wetterling Act, Your Honor, was remaining in place for 3 years and had sort of a sunset provision under it. No, no, I know, that's going forward, but was the requirement to register under the Wetterling Act, did that apply as of the enactment date, or did that reach back? Your Honor, actually, the Wetterling Act was not effective for a year into the future. So you think it only applied to that year? No, I'm sorry. The Wetterling Act was enacted in 1996. So if the offense were committed in 1994, did that person have to register under the Wetterling Act? They had to register, but there were no criminal penalties. At that point, it was a 1994 law called Wetterling, and then 2 years later, under the Lichner Act, criminal penalties were added. Are reading better accords with the text and congressional intent? Sotomayor, clarify that answer. The are you admitting that there were no criminal enforcement options for the attorney general under the Wetterling Act for acts committed prior to 1996? Is that what you're saying? Your Honor, the Wetterling Act, as it was enacted in 1994, was a registration requirement without criminal penalties. In 1996, the Lichner Act was enacted amending Wetterling and added the criminal penalty, the Federal criminal penalty of 1-year punishment for failure to register. And that included all individuals who had been convicted of sex abuse acts before 1996? I don't know. Are reading better accords with the text of SORNA and congressional intent? But the government reading is simply not reasonable. If SORNA were to apply to all pre-enactment and pre-implementation offenders on day one, and the attorney general could then modify in the future, which would in effect repeal SORNA as to some offenders, then the government could have a situation where someone was convicted of an offense and then have to be covered under SORNA, and then later the AG could decide that that group was not required to register. Maybe the attorney general doesn't have that power. But your position is that whether this behavior, not registering, is criminal or not, is left up to the attorney general, is left up to the executive. Do we have other examples where Congress says, well, we don't know whether this should be a criminal offense, so we're going to leave it to the attorney general? It's quite different to say the attorney general will implement it in the technical details. But to say that whether it's a criminal offense or not is up to the attorney general, is there any other instance where that's so? Your Honor, I'm not aware of any, but we don't — this is not what the attorney general is doing. This is — SORNA is a civil registration requirement, and the attorney general is deciding whether someone has to register. In order for a criminal indictment to be brought, a person would have to travel and then fail to register. So it's really not actually deciding whether someone would be guilty of a crime or convicted of a crime or exposed to a crime. Kennedy, I — maybe I just don't grasp the core of the case, then. I thought this was a criminal conviction, and that you were arguing that it's a criminal conviction because the conduct that's prohibited by the statute was conduct that covered this class of people by order of the attorney general under the interim reg. Is that wrong? Well, Your Honor, actually, what we are seeking is the ability to contest the attorney general's rule. We're saying that this is a criminal conviction that resulted from the fact that your client was within the class of persons covered by the statute. The government says they're covered anyway. You say they're covered only because the attorney general acted, but then you say it's a criminal — it's a civil provision? Well, Your Honor, it is a failure to register and then travel. I mean, travel and then fail to register after you are obligated under SORNA to register is a crime, yes. Well, I — You know, my problem is that's very strange. I find it very strange to leave it up to the attorney general whether something will be a crime or not. It will be a crime if the attorney general says so, and it won't be a crime if he doesn't. I mean, especially to leave it up to the attorney general, for Pete's sake. He's the prosecutor. You know, it will be a crime if the prosecutor thinks it is, and it won't be a crime if the prosecutor thinks it isn't. I don't know of any parallel, and I think it's sailing close to the edge of unconstitutionality. Whereas, what the other side claims is simply it's a crime to begin with, but the attorney general can make it not a crime. That's sort of like prosecutorial discretion in his judgment. If it shouldn't be a crime, you know, I have trouble with that, too, but it's a lot closer to prosecutorial discretion than what you're asking us to accept, that something is a crime only if the attorney general says it's a crime. That just seems to me very strange. Well, Your Honor, that's really what the text says, and our reading is that a court can make it not a crime if the attorney general says it's a crime, but it's not a crime if the attorney general says it's not a crime. Now we do the attorney general has spoken, the first time you say it was ineffective because there was no notice and comment, but from, what is it, August of 1908, we have a rule, a final rule, that did go through notice and comment. So what we're talking about is this case simply about the period from February 1907 to August 1908, and that's all that's involved in this case, only those people? Or are you contesting that after August 1908, you still have some kind of claim? Well, Your Honor, our case does not involve the time period after August of 2000. So this whole case is about what happens between February 07 and August 08, and that's the limit of it, because there was no rule at all before February 07. And there was a rule August 08. It's just that period this case is about. Yes. Our client traveled in 07. And? It's the period from the enactment of SORNA until the adoption of the SMART guidelines, right? That's what we're talking about. Well, Your Honor, if the SMART guidelines are deemed valid, yes. But that was in 2008. Our client traveled in 2007. And so the Attorney General's interim rule is the rule that would subject him to criminal liability. Excuse me. Let me go back to that question, Counselor, to that answer. Let's assume we accepted the Solicitor General's understanding of the rule, that it was illegal to travel, that you had to be — had to register from the start of SORNA. What challenge do you have left either to the interim rule in 2007 or to the final rules in 2008? What — what challenge could you conceivably make? Your Honor, if the — if the statute applies from day one, we would still contest the interim rule for the Attorney General took action but did not exclude our client. The Attorney General did what he was authorized to do in subsection D. What would be the basis of that challenge? Pardon me? What would have obligated him to take your client out of SORNA? The exercise of his discretion to not take him out. Could you tell me why? Because— What would be an abuse of his discretion if he didn't take your client out? Because he had exercised his discretion under subsection D and decided not to exclude our client from the statute. We're in a circuit of argument. What would have commanded him to take your client out? It would be his discretion. You would have to bring some sort of suit that said he abused his discretion. On what basis would he have — what would be your claim of abuse, other than I really want my client out? Well, that he would have standing. I mean, that's what we're trying to — we're trying to get standing to contest the interim rule. But what impact would the interim rules have had on you? If the statute applies from day one without the interim rule, we still would — that is what the standing issue is about. I mean, we're saying that the interim rule is the only rule that gave the government the ability to include Mr. Reynolds in the prosecution. You have a notice and comment claim, right? Yes. Yes, Your Honor. But what you're challenging is the interim rule, because there was no notice and comment. So you would have had no challenge, not from the date of Sona's enactment, but from the date of the rule that you're challenging, and that rule was February 07. Your challenge is to the invalidity of the interim rule, right? That's right. Okay. So — but before there was an interim rule, you would have no such challenge. No, but the — Sona would not apply to Mr. Reynolds before then. You might have some other case, but this case is about a challenge to a rule as invalid, is that — as I understand it. So there had to be the rule for you to make the challenge. I'm sorry. I missed the last part. You are challenging the Attorney General's first rule as invalid, the February 07 rule. You say it's invalid because there was no notice and comment. You had no challenge. Your challenge doesn't reach before that, because there was no rule before that. So that you can — the earliest point is when the rule was adopted, you're saying the rule was invalid. So that's why I said the brackets are from when there was an allegedly invalid rule, which was in February 07, to when there's a valid rule, which is in August 08. That's right, Your Honor. I mean, that's not — No, that's not — no. Your argument, as I understand it, is there was no notice and comment when he issued the interim rule. Right. If there had been notice and comment, you would have jumped in with comments that would have convinced the Attorney General not to apply the rule to your client. That's right. Okay. That's right. And your argument is further, that without the rule, SORNA doesn't exist, right? For our client. Right. He is unable to comply with the initial registration provision under B, because he was released from prison a year before SORNA was enacted, so he could not meet either one of the descriptions of initial registration. That doesn't mean SORNA doesn't apply. It means 2250 doesn't apply. That's right. Is that right? Well, yes. I mean, it might be a metaphysical, but it may be that Congress intended the statute to apply to people like your client. But the question is when the initial registration has to take place. And I took you as saying until the Attorney General acts, we don't know. So 2250 doesn't criminalize a failure until he can know when it will be supposed to register. Register under SORNA. That's right. That's right. Okay. The problem is here that the prosecution, the Attorney General's office, is substituting a State registration for the initial registration under SORNA. And that's just not what the text says. Ms. Cannon, why do you think that Congress would have written the statute in this way? I mean, in your brief, you say it was all very complicated and Congress was worried about certain problems, the way different registrations overlapped on each other. But exactly what was so complicated? Why couldn't Congress just have applied the statute to people in Mr. Reynolds's situation itself? Well, even the government agrees in their brief that there are complications. I was going to ask the government the same question. What are the complications that Congress is so worried about? Some sex offenders, you know, from the various States, there were State laws that were varied amongst each other. There was the Federal Wetterling Act that had its own different periods of registration and different requirements. And I think that one of the permutations, some of them are, that some sex offenders never had to register in some States. Some had been convicted before and had served out their time and no longer had to register. And some were released from prison, you know, before the enactment or implementation of SORNA. And an example of a permutation that was going to take some thought and some consideration is the one that sort of is an example in a different context in the Federal Register and in the government's brief, which is that certain people who had served their time and were completely out of the system, if they got rearrested for a misdemeanor, the Attorney General decided that those individuals did not have to register for a State to be deemed substantially implemented with respect to SORNA. And so that's an example of a type of decision, a complication, that the Attorney General was particularly well-suited to deciding in making that determination. Sotomayor Arrested for a misdemeanor to do what? Any arrest for a misdemeanor that would bring a previous offender back in the system. If that person was just convicted of a misdemeanor, they would not, the State would not have to reregister them in order to be deemed substantially compliant with SORNA and get the Byrne Grant money. Sotomayor I thought Justice Kagan's question was, what would have stopped Congress from just saying, you have to register on the day of passage? There was nothing to stop Congress from doing that. Correct? They could have done that, but they were concerned about how you get the older convictions, the older pre-enactment people into the new system. This system was just a way to make it automatic, correct? That's your argument? Right. They wanted to have a new registration, a new system that would start from a certain point that would bring in new requirements. And the problem is how to get the people with the older convictions and the older registrations into the system. And that would be done with initial registration. But Mr. Reynolds can't register. Kagan But why is it easier for the Attorney General to do that by regulation than for Congress simply to do it by the statute itself? What did they expect to happen in the regulatory process that would solve these problems for them? Well, I think that it's more flexible to have a regulation and takes perhaps less time than legislation. To think of all the different permutations, they don't know every State's laws and every State's capabilities. And so it was more flexible. And they could respond more quickly to changes. Ginsburg Well, take this case. What would compliance entail other than simply telling the Missouri authority he had to register, was registered in Missouri, telling the Missouri authority that he was moving to another State? That's all he had to do, right, to comply? Kagan Comply with Missouri's law, the State law? Ginsburg To comply with the SORNA requirement, that he'd have to tell the Missouri authority that he was moving to another State. And then Missouri would have an obligation to tell that other State he's there. Kagan Well, Your Honor, that — your question assumes that State registration would suffice for SORNA. And respectfully, the SORNA was not enacted until —  I'm talking about SORNA has been enacted, and now he's moving after SORNA is enacted, right? Kagan  Well, that's a — Ginsburg Okay. So SORNA is on the books. He's registered in Missouri. He's leaving the State. To comply with SORNA, what does he have to do other than tell the original State I'm moving to another State? Kagan Well, he would have to comply with the requirements of initial registration under SORNA. And those contain more requirements than under Missouri. Ginsburg But he can't comply with initial registration because he committed the crime even before SORNA was enacted. But now, what would he have to do to be in compliance? Kagan With Missouri law, with State law, would be to comply with Missouri law, tell Missouri he's leaving, and then go to Pennsylvania and comply with Pennsylvania law, perhaps. And that's also not a SORNA registration. That is a registration under State law. We know from Carr that SORNA is — doesn't create an obligation until the statute's effective date. And the statute's effective date is after a valid attorney general's regulation for purposes of people like Mr. Reynolds. Kagan Could you tell me, Ms. Cain, you may have said this and I may just have missed it, but under the new regulations, a man who's in the position of your client and who cannot initially register under B, B just doesn't fit his circumstances, does he now have to initially register again, or does his initial registration stick and he just has to update it when he moves? Ms. Cain The initial registration under SORNA could be updated. The State registration that he may have already done in the past is not a SORNA registration. He would have to register initially again. And that is a new registration. And that would be what Congress intended, because their goal was to not have a patchwork of regulations and rules. So it would be a new registration. But an update of a SORNA registration is certainly possible, yes. Ginsburg Under the current regulation, under the 19 — I mean, the 08 regulation, wouldn't be enough to comply, somebody in his situation, to comply simply by telling his parole officer I'm moving to the other State under the regulation that says how this is implemented? Ms. Cain Actually, Your Honor, no. We actually don't know the answer to that question, because the Attorney General has not issued regulations instructing offenders what to do. They have simply issued guidelines telling the States what they can do to substantially implement SORNA. So we don't really know the answer to that question. The point is that the requirement to initially register under SORNA was not effective until the Attorney General could not do it. It could not be effective until the Attorney General said so. And that's what the statute says under D. And that if you look at how the government is reading the statute, you apply it from day one, but yet they have the ability to modify SORNA, which in effect means to repeal SORNA's effect as to some people in the future, that also would cause a lot of complications, especially in the context I mentioned where someone with a misdemeanor, you know, may be part of the group that doesn't have to register in the future, but they had to at some point. And that's what the statute says. Sotomayor Let's see. Is there anything, if I understand the Solicitor General's position, all your client had to do after SORNA was passed was, after a reasonable amount of time or upon his conviction, that he was moving, correct? They say that he was not part of the people that could register within a normal or reasonable amount of time because of the State registration. But assuming that that wasn't the case, assuming he was, you know, just I'm not assuming that. Okay. Would he have been in compliance with SORNA under the final rules today, the interim rules when they were passed, or on the date that he left, if he had, when he traveled or a reasonable time thereafter, told his state of conviction that he had moved? Would that have been enough? No, Your Honor. What does he have to do in addition to that under the interim or final rules? We don't know, because again, the Attorney General has not issued regulations or guidelines telling offenders what to do. They have only issued guidelines telling jurisdictions how they can substantially implement SORNA. So it's not as though he cannot register under SORNA until the Attorney General specifies that he. That was the answer that you gave to my question, which was the same thing. Why isn't it sufficient now for him simply to tell his parole officer he's moving? I'm sorry. Yeah, that was — it would not be sufficient. I mean, it's — he has to initially register to register under SORNA. And he can't do that until the Attorney General issued a valid rule, which we are contesting that the 2007 rule was not valid. We're saying that our client has standing to make that challenge. We were denied the ability to do that below. And I would like to reserve my time if there are no further questions. Thank you, counsel. Ms. Sherry. Mr. Chief Justice, and may it please the Court, if I could start by answering your question, Your Honor, about the Wetterling Act. It was not retroactive. It didn't apply to pre-enactment conduct. It defined a sex offender, unlike SORNA, as somebody who is convicted of a sex offense. And in guidelines issued after Wetterling and after several subsequent amendments to the Wetterling Act, the Attorney General interpreted it as only requiring States to register offenders that are convicted not only post-enactment but post-implementation by the State. And one such site is 61— Post what? Post-implementation by the States. And so 61 Federal Register Site 15112 is just one example of that type of regulation. And so when Congress enacted SORNA, it switched from is convicted to was convicted in order to include pre-enactment offenders. Justice Kagan, to get to your question about why is it all so complicated, our answer is that it really is not. There's no reason why it couldn't have applied on day one to all pre-enactment and pre-implementation offenders. And to start off, when you look about all pre-enactment and pre-implementation, this is an incredibly large class. This is all existing sex offenders on day one and all existing sex offenders for many months and years going forward while the States proceed towards implementation. And as I indicated, why would Congress have given you the authority to exempt people? It seems to me that the burden is on you in the exact same way as it's on Ms. Kagan. In our view, what subsection D was essentially was a safety valve. It wasn't something that Congress thought the Attorney General was going to need to use, but it was something that was there for the Attorney General should problems arise in the course of implementation.  for the State to use. Alitoso What would happen in this situation, someone is convicted of a sex offense before SORNA is enacted, then shortly after the statute is enacted, the person moves to a new State, does not register, then after that, the Attorney General exercising the authority that you say he has under subsection — exercising, excuse me, exercising the authority under subsection D, determines that SORNA shouldn't apply to people who were convicted of offenses before its enactment. Would that person have committed a criminal offense? I think at the time he acted, yes, I suppose the Attorney General could decide whether or not he was going to apply his regulation prospectively or retrospectively, but I think the important point is the same result is reached under Petitioner's view. In Petitioner's view, the Attorney General has full and complete control of the light switch. Congress didn't do anything and simply left it for the Attorney General to turn the lights on. We don't think that's right for a number of different reasons, one of which is the way that Congress delegated authority to the Attorney General in subsection D. It didn't — Alitoso Well, Congress wasn't sure whether it wanted — whether it was appropriate to apply SORNA retroactively, then I just — and therefore was willing to leave that to the Attorney General. And I don't understand why it would have made the act applicable immediately upon enactment, pending a determination by the Attorney General. Sherry Our understanding is that Congress did know that it wanted to include as a general matter all pre-enactment and, again, not just pre-enactment, but pre-implementation offenders as well, and I think we know that because when you look to the provisions that actually speak to what a sex offender is required to do under the act, and there are six such provisions, they all start the same way. They say that a sex offender shall do something, and it defines a sex offender as somebody who was convicted. When you look at all six of those provisions on their face, they apply to all sex offenders so defined without any qualification. And Petitioner's view is that despite that clear language, despite the lack of any qualification within those provisions, by virtue of subsection D, what Congress is really saying is that nobody has to register until the Attorney General says otherwise. Sotomayor So how do they know where to register? Do you agree with your adversary that they have to register under SORNA? Sherry No. They don't have to register under SORNA. Sotomayor So how were they supposed to know when or how they would register until the Attorney General acted? Sherry Sure. If I could break it up into a few classes, again, we're talking about pretty much actually we are talking about everybody on day one. And so for a number of pre-enactment and pre-implementation offenders, they're still going to be in prison on the day that SORNA was enacted. Sotomayor I'm not talking about those people. Sherry Okay. Sotomayor Not the people who can comply with B. I'm talking about the people. Sherry Okay. So people and then the second group I was going to talk about are offenders like Reynolds who have already registered before SORNA was enacted. They're already initially registered. It's the very same State registry system that preexisted SORNA. There's no creation of any SORNA registry and the statute itself doesn't talk about a SORNA-compliant registry. To the contrary, it defines a sex offender registry in 16911, subsection 9, and it's on page 10A of our brief. It defines a sex offender registry as a registry of sex offenders maintained by a jurisdiction. So these are the same registries that have been in existence in all 50 States for the last decade. So offenders like Reynolds don't have to do anything under B. B simply doesn't apply to them. They do, however, as was pointed out, have to comply with the other provisions. They do have to do what C requires, which is when Reynolds moved from Missouri to Pennsylvania, he had to tell somebody. That is what C requires. It's what he was required to do even before SORNA was enacted. And what Congress did with respect to the subset of sex offenders that haven't already registered before SORNA but that need to get on the registry rolls afterwards because, for example, their sex offense wasn't covered before SORNA. Roberts, So your argument is that requirements in the heading for 42 U.S.C. 1691.3, registration requirements for sex offenders, means something different than requirements in subsection D, which the Attorney General can issue rules about. Because you're saying although there is the requirement that they register and comply with C and all those other things, when it says the Attorney General can issue regulations specifying the applicability of the requirements of this subchapter, that only meant the administration, you know, provisions, not the general requirement that you register and keep current and all that. No, I don't think that that is what we're saying. What we view D as essentially is a safety valve. It does give the Attorney General that authority with respect to the requirements. But going forward, Congress has set the baseline. Congress has set the default rules. Roberts, The safety valve to release what? To release sex offenders if needed to perhaps suspend certain registration requirements. And let me give a couple of examples. Roberts, You are talking about sort of in the weeds, the little details, not the underlying requirement of registration, right? No, I think arguably it could be both. Again, I don't think this is something that Congress thought the Attorney General was necessarily going to have to exercise. And in fact, the Attorney General has not done so. But does that mean, Ms. Sherry, that the Attorney General could, if he wanted to, for whatever reason, could exempt all pre-enactment offenders from SORNA? I think as a theoretical matter, on its face, the delegation of authority in D is quite broad and plenary, but I think as And would allow that. So when you say it gave the Attorney General the ability to confirm or modify the requirement in Section A, you mean he could, if he wanted to, if he wanted to, exempt all pre-enactment offenders. And again, I say in theory because I think like all other delegations of authority, the Attorney General is certainly limited to acting in furtherance of the purpose of Congress, and here we know that it works perfectly. We had a case involving the meaning of modify, and it doesn't mean repeal. So he presumably could suspend the whole thing. I do know what case you are talking about, and I have read it, and that's certainly  But the confirming modify is your language, not the statute's language. I'm not saying I definitely remember the name. I think it was MCI, but I do know what case you are talking about. I mean, here the word is specify as opposed to modify, and I guess there could be an argument for that. Sotomayor authorized the FCC to modify the requirement to post rates, and the FCC simply eliminated the requirement to post rates, and we said that that was no good. And I suppose a similar argument could be made with respect to specify. I don't think it necessarily has to be a case. Breyer, taking the language aside, I would like to go back to what Justice Sotomayor was asking. We are talking, it seems to me, about section 2250. He was convicted of violating criminally that section. So I have no problem about the statute applying to all these people. It's a question of how it applies. Imagine with me that we have an individual who was convicted a year ago. And sentenced to a 5-year term. Does the statute apply to him? He was convicted a year ago of a sex offense. Correct. In our view, the statute does apply to him, of course. Of course it does. Now, he hasn't registered yet. He's in jail for 4 more years. So has he violated 2250 so far? He has not. Not. Thank you. So a person who has recently, recently committed the crime, is in prison, is under an obligation to register, is yet not in violation because the time for initially registration, registering has not yet expired. Now let's go back to a person who is far less certain how it applies. He committed the crime 10 or 15 years ago. He has long since been released from prison. There are, as you point out, several categories. One is a person who has to ob or should under Michigan State law register, but he didn't. Another is a person who did and moved. You know, there are several categories. Now, is he in violation of 2250? Your point is he is immediately. Even though it was much less clear that it applied to him, much less clear. And much less clear, in fact, it doesn't say when he is supposed to register, but still 2250 applies to him. I just wonder how that could be, particularly when we have three sentences in D which seem to me to tell the Attorney General, certainly please deal with that kind of a case. If I could start with 2250 and then go back to subsection D, that is not our position. 2250 is the criminal provision. What we are actually looking at here are the registration requirements. Breyer. I thought he was convicted of a crime. I thought he was convicted of a crime under 2250. That's why I asked the question. And his lawyer said in response to my question that one of the things she wants to argue is that he cannot be convicted under 2250 until he is under a legal obligation to register, and that initial registration is not a legal obligation until the Attorney General makes his rules. I thought that was the argument. Let me make an important distinction. If we are actually talking about Reynolds here, you are right, but Reynolds was not convicted and was not prosecuted for failing to comply with the initial registration requirements in subsection B. He was convicted and prosecuted for failing to comply with the timing requirements in subsection C, which are quite clear as applied to offenders like Reynolds who have already registered or are already in the system. What he did was he traveled from the door to the door. Breyer, subsection C says he has to not later than three days. Do you want to tell us where this is? Oh, sure. This is on 12A of the government's brief. It's very helpful to know what you're talking about. Absolutely. But you are suggesting, Ms. Sherry, that B and C have nothing to do with each other. And in fact, one can read A, B, and C as all integrally linked and referring only to post-enactment offenders. So A is the umbrella provision. It says a sex offender shall register and keep the registration current. B says how you shall register initially. And C says how you shall keep that registration current. So all three of these refer only to post-enactment offenders. And then D comes along and says, by the way, the Attorney General can apply all of this to pre-enactment offenders as well and can specify how to do that. Again, I don't think that's right. And if it helps, I'd like to walk through the different provisions. The one thing I would say on the outset, however, is when you say that when you read those sections, you can read them as only applying to post-enactment offenders. I don't think that's right, especially because of subsection B, because on the day that SORNA was enacted, every single person in prison at that time was by definition a pre-enactment offender. And so on its face, when you read subsection B, it quite easily applies to quite a number of pre-enactment offenders. And the other point I would make along those lines is the fact that subsection E doesn't just talk about pre-enactment, it talks about pre-implementation offenders. So offenders that were convicted after SORNA's enactment, but before a state had implemented, again, quite easily fit not only within subsection B, but within all the other subsections as well. And with respect to the interrelationship between them, I think subsection A really identifies the jurisdictions in which an offender needs to register. And so the first sentence sets out three jurisdictions in where an offender both needs to register and to keep the information current. Subsection B really serves a limited purpose. It's an intake process. It's getting an offender into the system. For offenders like Reynolds who are already in the very same system, there's nothing to be done under B. B simply doesn't apply to them. B applies to people who are not already in that system, and for those that can comply with the timing and gets them in before they're released to the community. But the inability to comply with subsection B for the small set of offenders that cannot comply with the timing requirements, it doesn't immunize them from complying with all the other registration requirements. Breyer, in other words, you're reading C as saying, to go back to my example, the person who was convicted last year and has four more years to do his initial registration, nonetheless, if he changes his name, if he stops being a student while in prison, he has to register tomorrow or the day after. I would say if that's your reading of those two sections, it's going to confuse everybody who is in prison, as it did confuse me. That is not my reading of those two sections. All right. Then I take it your reading is he does not have to fulfill C until after he has to have initially registered. And so we're back to the question of why you treat somebody who committed the crime long ago with less clarity, with less time to initially register, with more confusion from one jurisdiction than another, than you would treat a person who was convicted last year, is still in jail, and has four more years to register. That's why I read D as trying to sort that kind of thing out. Two points on that. Number one, for offenders like Reynolds that are already registered, there's nothing more to be done as far as registration goes. All they need to do is to keep the information current and to keep it updated. The other point I would make, since we're talking about 2250, Congress provided other protections for offenders that were unable to comply with the timing requirements. Number one, it provided impossibility affirmative defense in 2250B. And the other thing that Congress did is it required that any failure to register in order to be subject to criminal sanctions, that it be a knowing failure to register. In other words, that the offender know he has a registration requirement and know that he is not complying with that requirement. So the idea that there are some hypothetical or maybe even not so hypothetical sex offenders out there who can't comply with the precise timing in B and will be — have no idea what they're required to do, they're not going to be — they're not going to be criminally liable under 2250 because there's an impossibility defense. And to the extent they don't know that they have a registration requirement, they're also not going to be criminally liable under 2250. And so the — Roberts. Why isn't part of your answer to Justice Breyer's question that the one person who doesn't have to register for four years is in prison already? So presumably he doesn't present the same type of threat that led to the enactment of these registration laws in the first place. That's absolutely right. I mean, the release from — the reason the release from prison is the — is a trigger is because the concern and the reason we have registration is for periods of time where these offenders are released into the community. And that's why the timing requirement in B is there. The notion is that before offenders are released into the community, we want to get them on the registry rolls. We want to be able to track them from the day that they're released. Breyer, your view is that they have to register initially when? If they have not? No, no. I'm just saying, take my example. The person is in Michigan. Michigan does have a sex registration thing, but he never actually did it. So now this Federal Act comes in, and now when is he supposed to register? When is his initial registration? He has to register within a reasonable time. Oh, a reasonable time. And what is a reasonable time? Given the other timing and the rest of the requirements, something probably along the lines of give or take three business days. The important point, however — Three business days, he's supposed to go out and do that. And if he doesn't do it, he has committed a Federal crime which makes no mention of it, no mention at all. And he's just supposed to guess that that's three business days because he's a lawyer? Is that why? No. It's actually — it's not unique with respect to the statute. It's quite common for status offenses. And let me try to give one example. One of the statutes that this Court looked at fairly recently, 922G9, makes it unlawful to possess a firearm after having a conviction for a misdemeanor crime of domestic violence. That statute was passed in 1996, and it applied to everybody who has been convicted of a domestic violence offense. And so if an individual had a domestic violence conviction in 1990, for example, and had had a firearm in his house, in his possession for the last 20 years, when the statute was passed in 1996, he was in violation of the statute. Of course, he couldn't be criminally prosecuted unless he was given some reasonable period of time to get rid of the firearm. But there's nothing unique with respect to that. And again, the criminal provision here, 2250, provides additional protections. It has an affirmative defense for impossibility, and it requires that there be knowledge. So for an offender that knows he's required to register, he's given a reasonable amount of time to come into compliance with that registration requirement. Reynolds in particular is a good example here of what Congress is trying to get at. Reynolds knew he was required to tell somebody when he moved from Missouri to Pennsylvania. He knew that because he signed registration forms in Missouri telling him as much, and those are in the Joint Appendix at pages 16 and 17. Ginsburg. But those were under Missouri law, not under the Federal statute. They were under Missouri law, but the important point for SORNA purposes is that he knew he had a registration requirement. He doesn't have to know what law it arises under. And again, the sex offender registries that preexisted SORNA are the exact same sex offender registries that SORNA is using. SORNA was enacted in 2006. It wasn't starting over. It wasn't starting from scratch. It wanted to build on the previous regime. It wanted to fix it and make it better in filling gaps and filling loopholes and stitch all of the State's distances. Roberts. And providing criminal penalties that weren't always there. That's a big change. The criminal penalties, the Federal felony criminal penalties were not there before. Wetterling did have a misdemeanor penalty, and a number of States did have penalties. But again, the criminal penalty is distinct from the registration requirements, which is what we actually are looking at and what we're interpreting. The registration requirements, violation of which can result in criminal penalties in certain circumstances, but again, Congress provided additional protections for those circumstances, the registration requirements themselves not only apply to sex offenders and tell sex offenders what they're required to do, it also tells States and other jurisdictions what they're required to do if they want a standard to implement. Your theory of what the Attorney General did here, as you put it in your, I forget what, the regulations or the, was confirm the applicability of SORNA, right? That's the word you used, I think, on page 12 of your brief. We did. One of the things he did was confirm in the interim rule, the Attorney General in the preamble section, read the statute exactly as we read the statute. Roberts What is the other example, do you have any other example where an Attorney General confirms the applicability of a criminal law? I don't know if I would say confirm. There certainly are other examples where the Attorney General has had authority and exercised authority to define certain aspects of criminal law to be, is one example of such a case. I think that's different. I mean, if you're talking about defining which drugs are qualified, you know, under certain provisions that criminalize possession, things like that, that's clarification going forward. I'm talking about straightforward confirming, which is what you say happened here. The law says this, and I think it means, I think it means what you say it means. I mean, I think there are a number of examples where, for example, agencies do little more than restate what the statute says. I think this Court doesn't give deference in those circumstances, but it's certainly within the scope of the general authority of an agency or the Attorney General in this case to reiterate the statute's requirement. The Attorney General went a step further in the interim rule in that what the Attorney General said in the preamble is, I read the statute as written. I think it applies facially to all sex offenders regardless of the date of conviction, but I understand that defendants are making an argument to the contrary and in an abundance of caution to foreclose that argument to the extent I need to do something under subsection D, I'm doing it now, and I'm saying that, yes, it applies to all pre-enactment and pre-implementation offenders. And I think it's the same thing. So I get back to my question. What's your best example of an Attorney General doing something like that? Confirming? I don't know if I have one in a criminal context exactly, but I think the point maybe that Your Honor is getting at, and you can certainly correct me if I'm wrong, might be a point that you made earlier, it's certainly a somewhat unusual delegation of authority to the Attorney General. If Congress had wanted the Attorney General to decide whether or not the registration requirements at the very core of the statute had any operative effect going forward, presumably it would have told the Attorney General that he needed to do something. That's something that Congress did in many other provisions of SORNA where Congress said the Attorney General shall do something. In fact, more than a dozen provisions, Congress used that language to direct the Attorney General to take a certain action. But here it says shall. It says the Attorney General shall have the authority to specify the applicability of the requirements of this subsection. But it says shall have the authority, and I think there's a significant difference between shall specify and shall have the authority to specify. The latter is a passive delegation of authority. It's a permissive delegation. It suggests that Congress did not think that the Attorney General had to do something for the statute to apply as written. It suggests that the statute applied on day one to all pre-enactment and pre-implementation offenders, as all the other subsections that set forth the registration requirements suggest. But if the Attorney General in the future sees a need to specify the applicability going forward, then he has the authority to do that, not that he's going to meet the requirement. Sotomayor You're starting from a proposition, counsel, it seems to me, that Congress necessarily and under all circumstances thought that it had to include pre-SORNA convictions. But I don't know – yes, it wanted a uniform system, but it had State systems in place, it had an Imperfect Weathering Act in place, it had lots of other mechanisms in place to punish non-registrants. So you're starting from the proposition that by necessity they wanted to include pre-conviction felons. But I guess for those of us who believe in legislative history, and I know many of my colleagues don't believe in it or pay attention to it, there were two bills passed on SORNA. One, a House bill that made it very clear, explicitly clear, that it applied to pre-SORNA conviction felons. And the Senate bill, which under the label retroactivity, had the terms that D now has. Doesn't that suggest to us that Congress itself was unsure of whether it wanted to include the pre-SORNA convictions or not? I don't think so, and for two reasons. First, to address the bills themselves. I don't think the Senate bill, just like I don't think subsection D means that Congress meant to apply the registration requirements to all pre-enactment offenders in the registration provisions, and then take away that application in the specify the applicability provision. In the Senate bill that you're talking about, it defined a sex offender as anybody who has been convicted of a sex offense. And as this Court said in Carr, that's the language that Congress quite often uses when it intends to include pre-enactment conduct. So I think the verb choice, both in the Senate bill, in the House bill, and in the bill that was actually enacted, indicates that it didn't intend to include pre-enactment offenders. The other point I'd want to make is, again, another point that was made in Carr, which is that the registration requirements stand at the very center of Congress's efforts to find and to register the 100,000 missing sex offenders that had fallen off the registry rolls under the previous regime. So I think it is quite clear with respect to SORNA that Congress did want to include pre-enactment offenders. It wanted to not only find those missing sex offenders, it wanted to make sure that they got back on the registry rolls. And as far as the hundreds of thousands of offenders that were already on the registry rolls when SORNA was enacted, it wanted to make sure that they stayed on the registry rolls, that they kept the information current, they continued to update their information going forward. And again, with respect to pre-enactment offenders that were in prison at the time that SORNA was enacted, it wanted to make sure to get them on the registry rolls before they left prison, before they entered the country. Sotomayor, I guess my problem is that you make an assumption, you continue to make an assumption, that if the Attorney General hadn't acted, that the Attorney General was incapable of acting quickly. I mean, if the Attorney General had, within a few months, done what he ultimately did a year later or whatever time period after, had come out and said, it applies, this is what you do, briefly, you register wherever you were convicted or et cetera, if you move or change your name, then Congress would have accomplished the goal it wanted. If the Congress had wanted the Attorney General to act and to act quickly, presumably Congress would have told the Attorney General that he had to do something. Again, that's something Congress did in many other provisions of SORNA. Congress was shy about it. But if the Attorney General didn't try to act very swiftly, and if the Attorney General thought that SORNA applied from day one, why did the Attorney General try to rush through regulations that said nothing more than SORNA applies? Because when the Attorney General issued the interim rule, what he said was that reading it on its face, I do think it applies to everybody, but I recognize the defendants are making an alternative argument, and I think it's incredibly important that it apply to everybody and that it apply to everyone quickly, because we're talking about protecting our communities, we're talking about protecting the public and protecting our children from sex offenders, and having this uncertainty out there is not only not good for protecting the public, but it's not good for sex offenders, it's not good for jurisdictions that are trying to work towards substantial implementation of SORNA. And so I think you could look at it one of two ways, if the idea is, well, Congress left it to the Attorney General, but the Attorney General could have acted very quickly, I think that suggests that there probably wasn't that much for the Attorney General to do in the first place, and there's little reason that Congress would not have made that decision on its own, to the extent you think there was a whole bunch of things for the Attorney General to do, which, again, we disagree with. Presumably, that's something that would take some time, and during the interim period, those 100,000 sex offenders would remain missing, additional sex offenders would be added to that number, and the community and the public would continue to be at risk going forward. If there are other questions? Roberts. Roberts. What if we think the reason Congress left it to the Attorney General is because they just didn't want to decide? Or some people were saying this is fine, but not retroactive, and others were saying it should be retroactive. Do you see any constitutional issues with Congress delegating that authority to the Attorney General? The authority to make a criminal statute applicable on a retroactive basis? We don't see any constitutional difficulties with it. Of course, we don't think that's what Congress did, but we do think that the notion that Congress would delegate such a fundamental issue to the Attorney General in such subtle and opaque terms that the Attorney General didn't think he needed to do anything is quite significant when you look to see what Congress was intending. Scalia. Of course, it would strengthen your case if you at least acknowledged that it would be constitutionally doubtful. You wouldn't have to say it's bad, but if you said it's doubtful, it would strengthen your case, wouldn't it? That might strengthen our case here. But it would also work against your own interpretation, because your own interpretation allows you to exempt anybody that you want from the statute. Isn't that right? It does, but we do think there's a different starting point, and the difference in starting point is a fundamental difference, as Your Honor noted. Our argument looks a lot like prosecutorial discretion, whereas the other starting point is that Congress decided nothing and left it all to the Attorney General. Thank you, counsel. Ms. Cain, you have three minutes remaining. I'd like to address one point the government made, that there's no need to re-register someone in Mr. Reynolds's position once they've been registered under State law. They acknowledge the opposite themselves in footnote 12, where they say that a government or a State will have been deemed to substantially implement SORNA if it registers pre-enactment and pre-implementation sex offenders who remain in the system as registrants, as well as other people. So it's clear that the government believes that, acknowledges that people who are already registered must re-register under SORNA. The most important thing is that the SORNA statute, the obligation under SORNA, begins with initial registration and does not begin with a State registration. And enactment, Congress knew that certain people would be unable to register under subsection B, and that is why they enacted subsection B. We ask the Court to remand to the district court and to allow Mr. Reynolds to pursue his claim. Thank you, counsel. The case is submitted.